# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH M. CHERRY,

      Petitioner,

v.                               CIVIL ACTION NO. 3:13cv1
                                    (Judge Groh)

WARDEN TERRY O'BRIEN,

      Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On January 4, 2013, the *pro se* petitioner, Joseph Cherry, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241 seeking additional credit toward his federal sentence. On January 7, 2013, the petitioner paid the $5.00 filing fee. On January 14, 2013, the petitioner submitted his habeas petition on this court's approved form On January 15, 2013, the undersigned reviewed the substance of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On January 29, 2013, the respondent filed a Response together with a Motion to Dismiss or, in the Alternative, for Summary Judgment. On February 11, 2013, a <u>Roseboro</u> Notice was issued, and on February 15, 2013, the petitioner filed his response.

### II. FACTS

On January 19, 2009, the petitioner was arrested by Virginia law enforcement for failure to appear. (Doc. 10-2). On February 24, 2009, the General District Court of Portsmouth, Virginia, sentenced the petitioner to five years in jail, three years suspended. (Doc. 10-6).

On April 2, 2009, the United States Marshal Service ("USMS") borrowed the petitioner from state custody pursuant to a writ of habeas corpus ad prosequendum for his initial appearance in the United States District Court for the Eastern District of Virginia on charges of conspiracy to commit bank fraud and mail fraud, and concealment money laundering. (Doc. 10-5). On October 19, 2009, the District Court sentenced the petitioner to 112 months in prison and ordered this term to run consecutively to his Virginia state sentence. (Doc. 10-6). This sentence was later reduced to 79 months. (Doc. 10-7).

On November 9, 2009, the petitioner arrived at his designated federal Bureau of Prison ('BOP") facility. (Doc. 10-8). On December 14, 2009, the petitioner was released from his BOP facility and return to USMS custody for completion of his Virginia state sentence. (Docs. 10-1. 10-4, 10-8).

On September 24, 2010, after completing his Virginia state sentence, the petitioner was released into USMS custody to begin service of his federal sentence, which was lodged as a detainer. (Doc. 10-9). Thereafter, the BOP prepared a sentence computation for the petitioner, beginning the computation of his 79-month term of imprisonment on September 24, 2010, but with prior custody credit for July 30, 2008, and from August 20, 2008, to August 25, 2008, which had not been credited towards his Virginia sentence. (Doc. 10-12). Based upon this calculation, the BOP projects that the petitioner will be released from custody, via a good conduct time release, on June 11, 2016. (Doc. 10-13).

### III. CONTENTIONS OF THE PARTIES

The petitioner alleges that the BOP has compiled a gross miscalculation of the time served against his federal sentence which resulted from confusion associated with multiple sentences. More particularly, the petitioner alleges that the BOP unlawfully denied him credit for time served in state

or federal prison. Specifically, the petitioner alleges that his sentence began on November 2, 2009, when he arrived at FCI Cumberland to begin serving his sentence, and his sentence started regardless of the fact that his transfer to the Federal facility was done erroneously. The petitioner continues his argument by noting that a prisoner's federal sentence cannot arbitrarily start and stop just because of administrative error. For relief, the petitioner requests proper credit applied for time served while in federal custody for the period between November 2, 2009, and September 24, 2010.

The Government contends that the petition should be dismissed because:

(1) the petitioner did not exhaust his administrative remedies concerning the computation of his federal sentence; and alternatively,

(2) petitioner is not entitled to any additional prior custody credit because to do so would give him double credit for his detention time.

In his response to the Roseboro Notice, the petitioner maintains that he did file a BP-8, BP-9, B-10 and BP-11. The petitioner further maintains that he never received a response to his BP-12, and therefore, filed his habeas petition with this court. The petitioner then reiterates his argument that his sentence commenced on November 9, 2009, when he arrived at FCI Cumberland. The petitioner maintains that the BOP refuses to issue federal credit for the time he spent in state custody and accept responsibility for their mistake in removing him improperly from state custody and then returning him to state custody approximately one month later.

### IV. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint

must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986

V. **ANALYSIS**

5

## A. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant § 2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The respondent maintains that the petitioner has filed two administrative remedies at the institutional level that challenge the computation of his federal sentence. The respondent further maintains that the petitioner appealed only one of those remedies to the Central Office, which rejected the appeal and granted him 15 days to resubmit his appeal along with proper documentation. The respond contends that as of the date of his response, the petitioner had not resubmitted his appeal to the Central Office. Accordingly, the respondent argues that the petitioner has not exhausted his administrative remedies, and therefore, the petition should be dismissed.

Conversely, the petitioner argues that he did exhaust his administrative remedies. Although the petitioner has not attached copies, he recites a time line to support his argument. First, he alleges that he filed an informal grievance (BP-8) on June 12, 2012. The petitioner claims that the response did not address the specifics of the problem. The petitioner alleges that more specifics were requested but never received. The petitioner next alleges that he filed a formal grievance (BP-9) on July 23, 2012 which went to the warden. A response was received on August 29, 2012, which the petitioner maintains lacked substance and directed him to file an appeal to the regional if he was dissatisfied. The petitioner maintains that he did just that on September 1, 2012, when he filed his BP-10 with the Mid-Atlantic Regional Office. The petitioner maintains that he received a response on September 17, 2012, which he claims was disjointed, inaccurate and unsatisfactory. Therefore, he maintains that he filed his BP-11 with General Counsel for the BOP but did not receive a response.

Accordingly, he filed his petition with this Court on December 28, 2012.[1]

The respondent has provided the undersigned with specific information regarding Administrative Remedy ID 671959-F2, which was initiated on January 19, 2012, and which appears was not pursued beyond the BP-9 stage.(Doc. 10-10, p. 2). In addition, the respondent has suppled information regarding Remedy ID 701270. The BP-9 for that remedy was filed on August 16, 2012. That remedy was rejected at the BP-11 stage on December 5, 2012, for reasons which are unclear from the exhibit. (Doc. 10-10, p. 5). Arguable this second remedy is the same one to which the petitioner refers. If so, then it would indeed appear that the petitioner did not exhaust his administrative remedies because he did not resubmit his appeal with the proper documentation.

However, as conceded by the respondent, 28 U.S.C. § 2241 does not contain an express exhaustion requirement and the Prison Litigation Reform Act ("PLRA") is not applicable to this type of prisoner case. However, citing a decision from this district, the respondent argues that even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion." *citing* Baucum v. DeBoo, 2012, WL 2738470 , *4 (N.D.W.Va. July 9, 2012)(Bailey).

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith

---

[1] The undersigned notes that the original petition was received on January 4, 2013. However, the cover letter is dated December 28, 2012.

7

v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[2]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. Sentence Calculation**

Review of this petition must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

---

[2] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

18 U.S.C. § 3585(a). In addition, a defendant must be given credit 'for any time he has spent in official detention prior to the date the sentence commences...that has not been credited against another sentence.' 18 U.S.C. 3585(b)" King v. DeBoo, 2012 WL 1119763, *2 (N.D. W.Va. Apr. 3, 2012)(Bailey). e.

The Attorney General, through the BOP, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, supra at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir, 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**). (emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

Here, there is a clear dispute as to when the petitioner's federal sentence commenced. The petitioner maintains that it commenced on November 9, 2009, when he first arrived at FCI Cumberland. Conversely, the respondent maintains that the sentence commenced on September 24, 2010, after the petitioner completed his state sentence and returned to FCI Cumberland.

The following facts are not in dispute. The petitioner was arrested by Virginia law enforcement

officials on January 19, 2009. The petitioner was sentenced on February 24, 2009 by the State of Virginia to five years in jail, three years suspended. On April 2, 2009, the USMS "borrowed" the petitioner from state custody pursuant to a wit of habeas corpus ad prosequendum. On October 19, 2009, the district court sentenced the petitioner to 122 months in prison, later reduced to 79 months, and ordered the term to run consecutively to his Virginia state sentence. The State of Virginia had primary jurisdiction of the petitioner, and he should have been returned to state custody to fulfill his state sentence. Instead, the petitioner was transported to FCI Cumberland on November 9, 2009, and remained there until December 14, 2009, when he was returned to Virginia for completion of his state sentence. On September 24, 2010, after completing his Virginia state sentence, the petitioner was released into USMS custody to "begin" service of his federal sentence.

Based on these undisputed facts, the issue to be decided is what impact the petitioner's incarceration at FCI Cumberland from November 9, 2009, through December 14, 2009, should have on his federal sentence calculation. The petitioner argues that his sentence began to run on November 9, 2009, when he first arrived at FCI Cumberland, and he should receive continuous credit through the present date, including the period from December 14, 2009, through September 24, 2010, when he was confined in a Virginia state facility. In making this argument, the petitioner relies on the decision in Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002). The respondent has not addressed the implication of that decision, nor has he addressed, in any particularity, the impact of the petitioner's brief and clearly erroneous incarceration at FCI Cumberland during late 2009.

Although the petitioner has made a well reasoned argument, it is clear that the facts in the Weekes decision are clearly distinguishable from those in the instant case. In Weekes, the defendant, who was in state custody, was released into federal custody for prosecution on federal drug offenses. He returned to state custody pursuant to a writ of habeas corpus *ad prosequendum* for a hearing on state

10

charges. After the hearing, the defendant was returned to federal custody, sentenced on the federal charges and committed to the Federal Bureau of Prisons, then delivered to a federal facility. Approximately two months later, he was returned to state custody to serve his state sentence.

The defendant in Weekes, like the petitioner herein, argued that pursuant to § 3585(a), his federal sentence commenced when he was designated to the federal prison to serve his time and continued to run despite the fact that the United States returned him to state custody after approximately two months to serve his state sentence. The Tenth Circuit agreed with the defendant in Weekes, because the United States could not establish that the transfer of custody by state authorities to the federal authorities was conditional or temporary. There was a "presum[ption]...that both the United States and [the state] agreed to a permanent change of custody." 301 F.3d at 1181. The Tenth Circuit based that conclusion both upon the fact that the transfer was not done pursuant to a document which evidenced a clear intent that the transfer was temporary, such as by a writ of habeas corpus *ad prosequendum*, and because the subsequent conduct of both the United States and the state reinforced the presumption that a permanent transfer was intended.

Conversely, the facts surrounding the petitioner's brief incarceration at FCI Cumberland is more akin to the facts in Binford v. United States, 436 F.3d 1252, 1253 (10th Cir. 2006). In Binford, while the defendant was in state custody charged with state law violations, federal charges were brought against him. Pursuant to a writ of habeas corpus *ad prosequendum*, the state authorities released him to federal custody to face the federal charges. The defendant was sentenced under federal law, but the sentencing order "did not address whether the sentence would run consecutive or concurrently with any sentence arising from the pending state charges. Binford, 426 F.3d at 1253. Then, in a manner remarkably similar to that of the petitioner:

> [i]nstead of returning Binford to state custody, the United States

> Marshal Service mistakenly delivered Binford to the Federal Correctional
> Institution in El Reno, Oklahoma on April 23, 1996. After reviewing
> Binford's file, prison staff realized he should have been transferred
> immediately back to the state because the writ of habeas corpus
> *ad prosequendum* did not transfer the primary jurisdiction of custody
> to federal authorities. Accordingly, Binford was returned to Oklahoma
> state authorities on May 13, 1996

Id.

Here, like in Binford, it is clear that state authorities had primary jurisdiction and did not relinquish said custody to federal authorities. The petitioner, just as in Binford was simply "borrowed" by the federal court pursuant to a writ of habeas corpus *ad prosequendum.*

The undersigned recognizes that once a federal sentence has commenced, it "must generally be served continuously 'unless interrupted by...some fault of the prisoner, and he cannot be required to serve it in installments." Binford 436 F.3d at 1255 (quoting Weekes, 301 F.3d at 1180. However, "the continuous service rule is not a 'get out of jail early card for prisoners." Binford at 1256 (quoting Free v. Miles, 333 F.3d 550, 555 (5th Cir. 2003)). Here, the petitioner's mistaken delivery to FCI Cumberland was short-lived and corrected swiftly after the prison staff discovered the error. Moreover, the overall period of the petitioner's federal incarceration is not being extended beyond that contemplated by his federal sentence.

## VI. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc.9) be **GRANTED** and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days of being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

objections should also be submitted to the Honorable Gina M. Groh , United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: 5-3-2013

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE