# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**JOSEPH M. CHERRY, II,**

    Petitioner,

**v.**                                  **CIVIL ACTION NO. 3:13-CV-1**
                                            **(JUDGE GROH)**

**WARDEN TERRY O'BRIEN,**

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel. Pursuant to Rule 2 of the Local Rules of Prisoner Litigation Procedure, this action was referred to Judge Joel for submission of a proposed Report and Recommendation ("R&R"). Judge Joel filed his R&R [Doc.16] on May 3, 2013. In that filing, he recommended that this Court grant Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment and that Petitioner's § 2241 petition be denied and dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or

1

recommendation to which no objections are addressed.  ***Thomas v. Arn***, 474 U.S. 140, 150, 106 S. Ct. 466 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order.  **28 U.S.C. § 636(b)(1)**; ***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984).  Here, objections to Magistrate Judge Joel's R&R were due within fourteen (14) days after being served with a copy of the R&R pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Petitioner timely filed his objections on May 15, 2013.  Accordingly, this Court will undertake a *de novo* review of those portions of Judge Joel's findings to which objection is made.  This Court will review the remainder of the R&R for clear error.

## II.  Background

### A.  Factual Background

On January 19, 2009, Virginia law enforcement officials arrested Petitioner for failure to appear.  On February 29, 2009, the General District Court of Portsmouth, Virginia sentenced Petitioner to five years in jail, three years suspended.

On April 2, 2009, the United States Marshals Service borrowed Petitioner from state custody pursuant to a writ of habeas corpus *ad prosequendum* for his initial appearance in the United States District Court for the Eastern District of Virginia on charges of conspiracy to commit bank fraud and mail fraud, and concealment money laundering. On October 19, 2009, the district court sentenced Petitioner to 112 months in prison and ordered his sentence to run consecutively to the Commonwealth of Virginia's sentence. The district court's sentence was later reduced to 79 months.

On November 9, 2009, Petitioner arrived at his designated federal Bureau of Prison ("BOP") facility, FCI Cumberland. On December 14, 2009, Petitioner was released from his BOP facility and returned to the United States Marshals Service's custody for completion of his state sentence.

On September 24, 2010, after Petitioner completed his state sentence, Petitioner was released into the United States Marshals Service's custody to begin serving his federal sentence, which was lodged as a detainer. The BOP prepared Petitioner's sentence computation. The BOP began Petitioner's sentence on September 24, 2010, crediting him with prior custody credit for July 30, 2008 and from August 20, 2008 to August 25, 2008. Petitioner's awarded prior custody credit had not been credited towards his state sentence. Based upon this calculation, the BOP projects that Petitioner will be released from custody, via a good conduct time release, on June 11, 2016.

### B. Procedural History

On January 4, 2013, Petitioner Joseph M. Cherry, II, acting *pro se*, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 seeking additional prior custody credit toward his federal sentence. On January 7, 2013, Petitioner paid the $5.00 filing fee. On January 14, 2013, Petitioner filed his Petition for Writ of Habeas Corpus on the court-approved form.

On January 15, 2013, Judge Joel reviewed the substance of the petition and determined that summary dismissal was not warranted. Therefore, Judge Joel entered an Order to Show Cause against Respondent. On January 29, 2013, Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. On February 11, 2013,

the Court issued a *Roseboro* notice. On February 15, 2013, Petitioner filed his response.

On May 3, 2013, Judge Joel entered his R&R. Petitioner timely filed his objections on May 15, 2013. Accordingly, this matter is ripe for the Court's review.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." **Republican Party of N.C. v. Martin**, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243-44 (4th Cir. 1999).

But, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (emphasis added). "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements."

4

***Ashcroft v. Iqbal***, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

**B. Summary Judgment**

The United States Supreme Court and the Fourth Circuit Court of Appeals have recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See ***Blackledge v. Allison***, 431 U.S. 63, 80, 97 S. Ct. 1621, 1632-33 (1977); ***Maynard v. Dixon***, 943 F.2d 407 (4th Cir. 1991).

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* FED. R. CIV. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Anderson***, 477 U.S. at 250, 106 S. Ct. at 2511.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing

5

summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. **FED. R. CIV. P. 56(c)**; *Celotex Corp.*, 477 U.S. at 323-25, 166 S. Ct. at 2552-54; *Anderson*, 477 U.S. at 248; 106 S. Ct. at 2510. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511 (citations omitted).

## IV. Discussion

Petitioner objects to Judge Joel's R&R because he maintains that he should receive credit for time served on his federal sentence since November 6, 2009. Petitioner states he was released into federal custody and not as a result of any writ. Petitioner contends that the state's relinquishment of custody to the United States Marshals Service, even if based on mistake, results in the start of his federal sentence.

### 1. Sentence Calculation

Petitioner argues that his federal sentence commenced on November 9, 2009 when he first arrived at FCI Cumberland. However, Respondent contends that Petitioner's sentence commenced on September 24, 2010, after Petitioner completed his state sentence and returned to FCI Cumberland.

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." **18 U.S.C. § 3585(a)**. A defendant must be given credit "for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another

sentence." ***King v. Deboo***, Civil Action No. 2:11-CV-50, 2012 WL 1119763, *2 (N.D.W. Va. Apr. 3, 2012) (citing 18 U.S.C. § 3585(b)).

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating the inmate's term of confinement, including a determination of when the sentence commences. ***United States v. Wilson***, 503 U.S. 329, 334, 112 S. Ct. 1351 (1992); see ***United States v. Patrick***, No. 12-4488, 2013 WL 117804, *2 (4th Cir. Jan. 10, 2013). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

(emphasis added).

The United States Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." *Id.* Thus, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See ***United States v. Brown***, 977 F.2d 574, *1 (4th Cir. 1992) ("[A] defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence.").

In this case, it is undisputed that Virginia law enforcement officials arrested Petitioner on January 19, 2009. On February 24, 2009, the General District Court of

7

Portsmouth, Virginia sentenced Petitioner to five years in jail, three years suspended. On April 2, 2009, the United States Marshals Service borrowed Petitioner from state custody pursuant to a writ of habeas corpus *ad prosequendum*. On October 19, the district court sentenced Petitioner to 122 months, which was later reduced to 79 months. The district court ordered its sentence to run consecutively with his state sentence.

After Petitioner was sentenced by the district court, the Commonwealth of Virginia maintained primary jurisdiction over Petitioner. He should have been returned to state custody to fulfill his state sentence. However, Petitioner was mistakenly transported to FCI Cumberland on November 9, 2009. On November 30, 2009, the Commonwealth of Virginia notified FCI Cumberland that Petitioner should be returned to state custody. On December 14, 2009, Petitioner was returned to Virginia to complete serving his state sentence. On September 24, 2010, after he finished serving his state sentence, Petitioner was released into the United States Marshals Service's custody to commence serving his federal sentence.

Petitioner relies primarily on two cases, **Weekes v. Fleming**, 301 F.3d 1175 (10th Cir. 2002) and **Binford v. United States**, 436 F.3d 1252 (10th Cir. 2006).

In *Weekes*, the defendant was in state custody serving a sentence for possession of a controlled substance. 301 F.3d at 1177. On May 16, 1994, the defendant was released into federal custody for prosecution on federal drug offenses without a writ of habeas corpus *ad prosequendum*. *Id.* On May 27, 1994, the defendant was returned to state custody pursuant to a state writ of habeas corpus *ad*

8

*prosequendum* for a hearing on state charges. *Id.* After the state hearing, the defendant was returned to federal custody, and the state lodged a notice of detainer noting the defendant's state sentence was concurrent and requesting the defendant's return upon completion of his federal sentence. *Id.* On February 7, 1995, he was sentenced to a 188-month term of federal imprisonment, and on February 21, 1995, the defendant was designated to the federal penitentiary in Lompoc, California to begin serving his federal sentence. *Id.* On March 24, 1995, the BOP staff discovered that the defendant had not yet served his state sentence imposed on May 27, 1994. *Id.* Approximately two months later, the defendant was returned to state custody to serve his state sentence. *Id.* at 1177-78.

The Tenth Circuit Court of Appeals held that the defendant's sentence commenced when he was designated to the federal prison to serve his time and continued to run despite the fact that the United States sent him to state custody to serve his state sentence. *Id.* at 1179. The Tenth Circuit noted that the state "allowed the United States to take exclusive physical custody of [the defendant] without presenting either a written request for temporary custody or a writ of habeas corpus ad prosequendum." *Id.* at 1181. Additionally, the state subsequently used an *ad prosequendum* writ to regain custody of defendant for the May 27, 1994 hearing. *Id.* Also, the United States "consistently designated [the defendant] as a federal prisoner after it took custody." *Id.* Therefore, the Tenth Circuit concluded that the state voluntarily relinquished control of the defendant to the United States and the United States was under no duty to return the defendant to state custody after federal

sentencing. *Id.* Accordingly, the defendant was given federal credit for time served since February 21, 1995, the date his federal sentence actually commenced. *Id.*

Petitioner's case is unlike *Weekes* because there is no evidence that the Commonwealth of Virginia voluntarily relinquished control over Petitioner. For example, unlike the defendant in *Weekes* who was turned over to the United States without a writ of habeas corpus *ad prosequendum*, in this case, the United States Marshals Service borrowed Petitioner from state custody pursuant to a writ of habeas corpus *ad prosequendum*. Because the Commonwealth of Virginia did not relinquish or transfer its primary custody to the United States, the United States had a duty to return Petitioner to the Commonwealth of Virginia to complete his state sentence before commencing his federal sentence. *See also* **Waters v. O'Brien**, No. 7:08CV00555, 2009 WL 2016293, n. 3 (distinguishing *Weekes* because in that case, "both state and federal authorities took actions that indicated prolonged confusion regarding who had primary jurisdiction over the defendant, which the courts interpreted as implicit agreement to transfer primary jurisdiction.").

In *Binford*, the defendant was in the custody of Oklahoma state authorities. 436 F.3d at 1253. On October 17, 1995, state authorities released the defendant into federal custody for adjudication of federal charges pursuant to an order for writ of habeas corpus *ad prosequendum*. *Id.* The defendant remained in federal custody throughout the prosecution and subsequent sentencing on the federal charges. *Id.* Then,

> [i]nstead of returning [the defendant] to state custody, the United States

> Marshals Service mistakenly delivered [him] to the Federal Correctional Institution in El Reno, Oklahoma on April 23, 1996. After reviewing [the defendant's] file, prison staff realized he should have been transferred immediately back to the state because the writ of habeas corpus *ad prosequendum* did not transfer the primary jurisdiction of custody to federal authorities. Accordingly, [the defendant] was returned to Oklahoma state authorities on May 13, 1996.

*Id.*

The defendant argued that he was entitled to federal credit for time served from the date his federal sentence actually commenced, April 3, 1996, the date of sentencing. *Id.* at 1254. The Tenth Circuit affirmed the district court's finding that the defendant remained in the primary custody of the state during his federal prosecution. Additionally, the court found that there was no evidence that Oklahoma surrendered the defendant's custody to the federal authorities and that the defendant remained in temporary custody pursuant to the writ of habeas corpus *ad prosequendum*. *Id.* at 1256. Finally, the court noted that the defendant's "mistaken delivery to the El Reno facility was short-lived and corrected swiftly after the prison staff discovered the error . . . . As a result, [the defendant's] federal sentence never began until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence." *Id.*

This case is similar to *Binford* where the Tenth Circuit Court of Appeals found that the mistaken delivery of the defendant to a federal correctional institute did not result in the commencement of the defendant's federal sentence. In this case, the United States Marshals Service borrowed Petitioner pursuant to a writ of habeas corpus *ad prosequendum* for his initial appearance and prosecution on charges of conspiracy to commit bank fraud and mail fraud and concealment money laundering. On October

19, 2009, Petitioner was sentenced by the district court. Then, like the circumstances in *Binford*, Petitioner was mistakenly delivered to FCI Cumberland. This error was short-lived and corrected in about a month's time. Although the Court recognizes that once a federal sentence has commenced, it "must generally be served continuously 'unless interrupted by . . . some fault of the prisoner, and he cannot be required to serve it in installments.'" *Id.* at 1255 (citation omitted). However, "the continuous service rule is not a 'get out of jail early card for prisoners.'" *Id.* at 1256 (citation omitted).

Petitioner cites several additional cases for the proposition that his federal sentence commenced on November 6, 2009. These cases are inapplicable. **Vega v. United States**, 493 F.2d 310, 319 (3d Cir. 2007) (holding that "in order for a prisoner to receive credit for time [when] he was *erroneously at liberty*, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence.") (emphasis added); **United States v. Martinez**, 837 F.2d 861, 865-66 (9th Cir. 1988) (reviewing the doctrine for credit for time served when defendant was incarcerated after seven and a half year delay, but ultimately disposing of the issue because defendant failed to exhaust his administrative remedies through the prison system). In fact, *Martinez*, a case relied on by Petitioner, specifically states that "courts have original jurisdiction only over the imposition of sentence, not over its computation: 'It is the administrative responsibility of the Attorney General, the Department of Justice, and the Bureau of Prisons to compute sentence and apply credit where it is due. It is not the province of the sentencing court.'" *Id.* (citation omitted).

Accordingly, Petitioner's federal sentence did not begin until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence, on September 24, 2010, and Petitioner's objection is **OVERRULED**.

### 2. Exhaustion of Administrative Remedies

The parties did not object to Judge Joel's analysis regarding Petitioner's exhaustion of administrative remedies. Judge Joel concluded that dismissing the case for failure to exhaust administrative remedies at this juncture in the litigation would be a waste of judicial time and resources. Therefore, Judge Joel recommended that exhaustion be waived and the case proceed to a determination on the merits. In reviewing Judge Joel's analysis, the Court does not find clear error.

### V. Conclusion

Upon careful review of the record, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 16]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. Further, the Petitioner's Objections **[Doc. 18]** are **OVERRULED**. It is further ordered that the Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment **[Doc. 9]** is **GRANTED** and Petitioner's § 2241 petition is **DENIED and DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and

to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED**: June 19, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE